**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

David Harchanko,

Plaintiff,

v.

Newco Construction of America, Inc., and
Pat Brown,

Defendants.

Civil No. 01-2263 (DWF/SRN)

**MEMORANDUM OPINION AND ORDER**

---

Richard M. Carlson, Esq., Morris, Carlson & Hoelscher, 7380 France Avenue South, Suite 200, Minneapolis, Minnesota 55435, counsel for Plaintiff.

Catherine M. Hobart, Esq., Smith, Currie & Hancock, 2600 Harris Tower, 233 Peachtree Street NE, Atlanta, Georgia 30303-1530, and Kathleen M. Mahoney, Esq., Larson King, 2800 Minnesota World Trade Center, 30 7th Street East, St. Paul, Minnesota 55101-4922, counsel for Defendants.

---

## INTRODUCTION

The above-entitled matter is before the undersigned United States District Judge pursuant to Defendants' Motion for Summary Judgment. In his Complaint, Plaintiff David Harchanko alleges causes of action for breach of contract, failure to pay compensation pursuant to Minnesota Statutes § 181.01, *et seq.*, accounting, and unjust enrichment against Defendants. For the reasons set forth below, Defendants' motion is granted.

### Background

Plaintiff David Harchanko ("Harchanko") lives in Minneapolis, Minnesota. During his career, he has worked as a construction project manager and a licensed architect. Newco

DEC 1 0 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 1 0 2002
DEPUTY CLERK

Construction of America, Inc. ("Newco"), is a commercial and industrial construction company based in Atlanta, Georgia. In March 1999, the time at which the events that lead to this action arose, William Brown was the sole owner of Newco; William Brown's father, Pat Brown, was the Director of Construction; and Charles Daniels was the Senior Project Manager and managed the Atlanta office. The ownership of Newco changed in approximately March 2000, when Pat Brown became a part owner of Newco.

Harchanko previously worked with Pat Brown on construction and project management matters for Old Country Buffet. After their work at Old Country Buffet ceased, but before March 1999, Harchanko and Pat Brown discussed creating a partnership for a design and construction services company. During such discussions, which occurred sporadically over the course of a few years, Harchanko and Pat Brown discussed splitting the profits on the projects for their hypothetical company. However, none of those projects came into being and Harchanko and Pat Brown never formed a business.

In early March 1999, however, Harchanko contacted Pat Brown to inquire about a remodeling project for KPS Sales in Minneapolis for which Harchanko wanted to contract. Harchanko stated that, at the time of these discussions, he asked Pat Brown if Pat Brown was still interested in "doing what we had talked about . . . in working together like we had talked about." While Pat Brown asked for a brief time to consider the proposal, he stated that he thought it was something that he could work with. The two men never specifically addressed the details of their previous discussions about developing a partnership, but Harchanko asserts that he understood Pat Brown's comments to mean that they had agreed to split the profits on the KPS Sales project as they had discussed in their previous conversations.

Later, Pat Brown contacted Harchanko to inform him that Newco agreed to have Harchanko act as a project manager on the KPS Sales project. Pat Brown told Harchanko that Newco's standard salary for project managers was $1,250 per week, plus health insurance and expenses. Pat Brown also told Harchanko that in order for Harchanko to be employed by Newco in Minneapolis as a project manager, Harchanko would have to generate additional projects for Newco in the area. Harchanko and Pat Brown had no other discussions regarding compensation.

Shortly after this contact, Harchanko and Pat Brown began work together on the KPS Sales project.[1] Harchanko signed several different papers which stated that his salary was $1,250 per week. First, on March 5, 1999, Harchanko signed an "Employment Information" sheet that stated that his weekly pay was $1,250. Second, Harchanko signed an Employment Application, dated March 10, 1999, which stated that his position title was "Architect/PM" and that his salary was $1,250 per week. Finally, Harchanko signed another Employee Information Form dated March 10, 1999, that acknowledged his weekly pay as "Director of Architects" at $1,250 per week. Apparently, despite this paperwork, Harchanko still believed that he would be splitting profits on this and other projects in addition to his weekly pay.

During the time that Harchanko worked for Newco, Harchanko had two discussions regarding salary with Charles Daniels. In late 1999, Charles Daniels and Harchanko discussed setting up a separate company to provide architectural services to clients and splitting the profits. Daniels and Harchanko agreed that, at that time, they did not have enough work to start such a

---

[1] Technically, Harchanko was a leased employee for Newco through an agreement with CNA UniSource, an employee leasing service. Because UniSource is not a party to this action and because the employee leasing agreement does not, for purposes of this action, affect the relationship between Harchanko and Newco, the Court will refer to Harchanko's employment relationship as if it was with Newco, for simplicity's sake.

company. In March 2001, Harchanko sent a letter to Charles Daniels requesting additional compensation. In the letter, Harchanko requested a significant salary increase including additional compensation for architectural services and commissions on sales. In response, Charles Daniels met with Harchanko to discuss this matter and explained that Newco could not provide such a significant increase in pay. After this discussion took place, Charles Daniels sent a letter to Harchanko dated March 31, 2001, in which he counteroffered a 5% salary increase. However, Harchanko never accepted the counteroffer.

Harchanko was laid off or resigned from his position in July 2001 and commenced this lawsuit in November 2001. He claims that he is due $63,167.50 for architectural and drafting services that he provided to Newco apart from his typical duties as a project manager. Furthermore, Harchanko alleges that he is due a share of the gross project revenues (not offset by losses) for the projects to which he contributed at Newco.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and

inexpensive determination of every action.'" Fed. R. Civ. P. 1; *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Breach of Contract**

Harchanko's breach of contract claim rests upon the notion that, based upon Harchanko and Pat Brown's discussions that occurred long before Harchanko's employ with Newco, Harchanko was entitled to a split of the profits on the projects that he completed for Newco.

The essential question here is whether Harchanko and Pat Brown formed a contract whereby Newco was required to provide Harchanko with a split of the profits. A binding contract requires an offer, acceptance, and consideration. *Cederstrand v. Lutheran Bhd.*, 263 Minn. 520, 529-32, 117 N.W.2d 213, 219-21 (1962). Furthermore, "[a] contract requires a meeting of the minds concerning its essential elements." *Minneapolis Cablesystems v. City of Minneapolis*, 299 N.W.2d 121, 122 (Minn. 1980).

Here, it is clear to the Court that the parties formed an agreement whereby Harchanko would be employed by Newco. However, the Court finds that Harchanko and Pat Brown never agreed to split the profits from such endeavors. Harchanko admits that he never communicated

the specific profit-sharing terms that he presumed were in place when he and Pat Brown reached an employment agreement in March 1999. At that time, Harchanko merely asked Pat Brown if Pat Brown was interested in "working together like we had talked about." Harchanko's bare assumption that a profit-sharing agreement was in place is not enough to establish such an agreement. Furthermore, as evidenced by the paperwork that was completed at the time that Harchanko commenced his employment with Newco, Pat Brown merely agreed to pay Harchanko a salary of $1,250/week with benefits. Clearly, there was no objective manifestation of an agreement to pay such profits. Because Harchanko and Pat Brown never agreed to sharing profits, no breach of contract can occur by result of the non-payment of such profits.

**2. Unjust Enrichment**

Harchanko further asserts that he provided architectural services to Newco and generated revenue for Newco for which he was not compensated.

"[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Harchanko has not raised a genuine issue of material fact that Newco obtained the benefits of Harchanko's work illegally or unlawfully.

Harchanko has not established that Newco did anything to lead him to believe that he would be paid additionally for architectural services or shared profits. Harchanko met with Newco representatives on two separate occasions after he began working for Newco to discuss increasing his compensation. However, on both occasions, the parties did not reach an agreement, and Harchanko continued performing the same architectural work and project

manager work as he had done in the past. It is absurd for Harchanko to suggest that he can hold Newco liable for additional compensation after the parties had undisputedly failed to reach an agreement on that precise issue.

The services that Harchanko provided were within the scope of the agreement between Pat Brown and Harchanko. It is undisputed that Newco paid Harchanko $1,250 per week for the services that he provided to Newco. Such wages were intended to compensate Harchanko for generating business, as Pat Brown and Harchanko had discussed in March 1999. Furthermore, the architectural services that Harchanko performed appear to fall well within the ambit of Harchanko's role as "Director of Architects" or "Architect/[Project Manager]" as stated in his employment paperwork. Harchanko has not demonstrated that he did architectural work aside from his daily duties as project manager, but merely submitted an invoice at the discovery stage that classified some of the duties that he had completed as architectural in nature. This after-the-fact invoice alone is not enough to establish that Harchanko performed work in addition to the agreed-upon terms of employment.

Based upon this analysis, Harchanko cannot sustain a cause of action for unjust enrichment.

**4. Other Claims**

Because Harchanko has not established that he formed an agreement with Pat Brown to split the profits of his work at Newco, and because the Court has determined that Harchanko was paid the wages agreed upon pursuant to his contract with Newco, Harchanko's claims under Minnesota Statutes § 181.01 and his claim for an accounting are respectfully dismissed.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. No. 12) is **GRANTED** as to both Defendants.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 10, 2002

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*